IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | 8:03CR481 |
| | ) | |
| v. | ) | |
| | ) | |
| FRANCISCO LOZANO, | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant is before the court for resentencing on remand from the Eighth Circuit Court of Appeals, Filing Nos. 65 & 66. This Memorandum Opinion supplements findings made on the record on October 6, 2005, Filing No. 70, and in the court's Statement of Reasons filed on this date.

**I. FACTS**

This action has been remanded form the Eighth Circuit Court of Appeals. *See United States v. Lozano*, 413 F.3d 879, 880 (8th Cir, 2005) ("*Lozano II*"). The defendant was originally indicted and charged in the United States District Court of the District of Iowa with conspiring to distribute drugs from 1999 until February 20, 2001. He filed a petition to enter a plea of guilty to the conspiracy charge, but later moved to withdraw it. After the court denied the motion to withdraw, Lozano was sentenced to 160 months imprisonment. On appeal, the Eighth Circuit Court of Appeals reversed the district court's denial of defendant's motion to withdraw his plea. *United States v. Lozano*, 63 Fed. App. 962, 963 (8th Cir. 2003) ("*Lozano I*") (unpublished). On remand to the District of Iowa, the case was dismissed on the government's motion. *See Lozano II*, 413 F.3d at 881.

Lozano was then indicted in the United States District Court for the District of Nebraska for the same conspiracy and for two counts of drug distribution. *Id.* He entered a plea of guilty to the distribution counts and was sentenced by this court to 116 months imprisonment. The sentence was imposed pursuant to the then-recent decision of the United States Supreme Court in *Blakely* v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). *See* Filing Nos. 42, 52. Defendant again appealed, raising speedy trial and *Blakely* issues. The Eighth Circuit Court of Appeals found that there had been no speedy trial violation, noting that the conspiracy charge had been dismissed, and remanded for application of the correct remedy in light of the United States Supreme Court decision in *United States v. Booker*, --- U.S. ----, 125 S. Ct. 738 (2005). *See Lozano II*, 413 F.3d at 883 (noting "the remedy prescribed by *Booker* is to treat the Guidelines as advisory and not be limited to the facts admitted by the defendant).

A presentence investigation report ("PSR") was prepared by the United States Probation Office for the District of Nebraska ("Probation") and was distributed to the parties. It was largely based on the PSR that had been prepared in the District of Iowa earlier. The PSR shows that while awaiting sentencing on the District of Iowa conviction that was later overturned, defendant escaped from custody but was apprehended the same day. He was indicted and convicted in state court for the crime of escape and was imprisoned for 36 months on that charge.

The plea agreement that the parties executed in May 2004 remains in force on resentencing. Filing No. 37. In his petition to enter a plea of guilty, defendant stated as the factual basis for his plea, "[o]n February 15, 2001 and February 20, 2001, I possessed with intent to distribute methamphetamine." Filing No. 36, Petition at 14. In the plea

agreement, the parties agreed, pursuant to Fed. R. Cr. P. 11(c)(1)(C), that Lozano should be held responsible for more than 50, but less than 150 grams of methamphetamine (actual), resulting in a base offense level of 32. Filing No. 37. Issues relating to defendant's criminal history category, role in the offense, credit for time served and enhancement of obstruction of justice were to be resolved at sentencing. *Id.* at 2.

In the PSR, Probation noted that under the prosecutor's version of events, defendant was responsible for 79.8 grams of actual methamphetamine resulting in offense level 32. Probation further found that defendant was subject to an enhancement for obstruction of justice under U.S.S.G. § 3C1.1 for escape while he was detained pending sentencing in Iowa. Probation also found that, although application of an obstruction-of-justice enhancement ordinarily precludes application of a three-point adjustment for acceptance of responsibility, the adjustment for acceptance of responsibility was part of the plea agreement and should be applied. Accordingly, Probation determined defendant's base offense level was 31. Probation determined defendant's criminal history category was category III, based on the assessment of five criminal history points, including two for commission of the instant offense while under a criminal justice sentence (probation) for the offense of possession of a controlled substance in March 1999. Based on a criminal history category of III at offense level 31, Probation found defendant's sentencing range was 135 to 168 months.

At the sentencing hearing, the government urged application of the two-point enhancement for obstruction of justice. The government further contended that if the escape were regarded as relevant conduct, defendant would be entitled to credit for time served, but in that event his criminal history score should be upwardly adjusted to account

for the escape conviction. Accordingly, the government moved for a sentence at either criminal history category III and offense level 31 or criminal history category IV and offense level 29. The defendant objected to application of the obstruction-of-justice enhancement.

The court construes defendant's objection as both an objection to the guideline computation and a motion for departure for time served under U.S.S.G. § 3G1.3. The court also considers defendant's contentions as raising a constitutional objection to the application of the obstruction-of-justice enhancement.

## II. DISCUSSION

### A. Sentencing Procedure

In *United States v. Booker*, — U.S. —, 125 S. Ct. 738 (2005), the Supreme Court invalidated the United States Sentencing Guidelines ("Guidelines") to the extent that they were applied as mandatory. *Id.* at 764. Accordingly, the Guidelines are advisory and sentences are subject to appellate review for "reasonableness." *Id.* at 757, 765-66 (Breyer, J., opinion of the Court) ("remedial opinion"). In imposing a sentence post-*Booker*, this court must follow certain prescribed sentencing procedures. *United States v. Mashek*, 406 F.3d 1012, 1016 n.4 (8th Cir. 2005); *United States v. Haack*, 403 F.3d 997, 1002 (8th Cir. 2005). It must continue to determine the appropriate Guidelines sentencing range, since that range is an important factor to be considered in the imposition of a sentence. *Haack,* 403 F.3d at 1002. Once the applicable range is determined, the court should then decide if a traditional departure is appropriate under Part K and/or § 4A1.3 of the Guidelines. *Id.* However, "[b]ecause the guidelines are now advisory, a reasonable departure is not limited solely to circumstances that the formerly mandatory guidelines framework would have deemed permissible bases for departure." *United States v.*

*Hadash*, 408 F.3d 1080, 1083 (8th Cir. 2005) (stating that *Booker* excised the narrow prescription for when departures are warranted).  A sentence that includes a formerly permissible basis for departure is nonetheless "consistent with the now-advisory Guidelines and this is generally indicative of reasonableness."  *United States v. Shannon*, 414 F.3d 921, 924 (8th Cir. 2005).  Those considerations will result in a "Guidelines sentence."  *Haack,* 403 F.3d at 1002.

The court then considers the factors set forth in § 3553(a) to determine whether to impose the Guidelines sentence or a non-Guidelines sentence.  *Id.*  The court must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).  In addition, the court must consider the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the Guidelines and its policy statements, as well as the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct.  18 U.S.C. § 3553(a)(3)-(6).

The Guidelines range is thus one of many factors for the sentencing court to consider, and although the court is not bound by the Guidelines, it must consult them and take them into account when sentencing.  *Booker,* — U.S. at —, 125 S. Ct. at 767.  *See also United States v. Winters*, 416 F.3d 856 (8th Cir. 2005) (noting that "[t]he Guidelines range is merely one factor," and that review for reasonableness "must be based on *all* the

factors listed in § 3553(a)(6)," possible sentencing disparity must not be isolated "to the exclusion of all the other § 3553(a) factors") (emphasis in original). Indeed, any finding that "the range of reasonableness is essentially co-extensive with the Guidelines would effectively render the Guidelines mandatory." *See id.* at 861.

### B. Determination of Guidelines Range

To satisfy the Sixth Amendment concerns addressed in *Booker*, this court is now charged under the Sentencing Reform Act with the duty to "impose a sentence sufficient, but not greater than necessary," to comply with sentencing purposes and to "consider the nature and circumstances of the offense and the history and characteristics of the defendant" in determining a reasonable sentence. 18 U.S.C. § 3553(a)(1); *Booker,* — U.S. at —, 125 S. Ct. at 767. Nothing in *Booker* requires the court to determine the appropriate Guidelines sentencing range in any manner other than the way the sentence would have been determined pre-*Booker*. *Haack,* 403 F.3d at 1002.

In the present case, the parties are subject to a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) that establishes both the drug quantity and the offense level. Further, the parties agree to application of a three-point adjustment for acceptance of responsibility. The Guidelines articulate several policies that govern the quality and specificity of plea agreements for acceptance by the court. *See* U.S.S.G. § 6B1.2 (listing standards for acceptance of plea agreement).

The only issue for resolution by the court is whether the obstruction-of-justice enhancement should apply. Defendant objects to the application of the enhancement. Of course, the PSR is not evidence and is not legally sufficient for making findings of fact on contested issues. *United States v. Mesner*, 377 F. 849, 853 (8th Cir. 2004) (noting that

when "a timely objection to the PSR is made, the sentencing court may not rely solely on the PSR when making a finding as to the disputed facts but must do so on the basis of evidence").  The defendant does not dispute the fact or circumstances of his escape. Rather, the question how the state court escape conviction and the sentence that Lozano served for that offense affects defendant's federal sentence in this court.

Resolution of this issue depends on whether the escape is viewed as "relevant conduct" to the offense of conviction.  The determination that certain acts of a defendant amount to conduct that is relevant to the instant offense for imposition of either a concurrent or consecutive sentence under U.S.S.G. § 5G1.3 (b) or 5G1.3 (c) "usually turns upon the extent to which the offenses in question are related, and such relatedness inquiries are necessarily fact-sensitive."  See United States v. French, 46 F.3d 710, 717 (8th Cir.1995) (holding a district court's determination that a state conviction was part of the same relevant conduct as the charged conduct, for purposes of section 5G1.3, is a factual finding reviewed for clear error).

If the court were to apply the enhancement as conduct related to the offense of conviction, the Guidelines provide that defendant would be entitled to a downward departure in the amount that he served on that charge.  The Guidelines provide for downward departure if the defendant has completed a term of imprisonment for a conviction that was considered relevant conduct to his offense and was a basis for an increase in his offense level.  See U.S.S.G. § 5 G1.3 comment. (n.1).

Moreover, the prosecution of the escape as a separate crime takes it outside the purview of use as a sentencing factor.  See Blakely, 542 U.S. at —, 124 S. Ct. at 2539 & 2540 n.11 (rejecting as subjective the "tail which wags the dog" standard for separating

sentencing factors from substantive offenses and characterizing the obstruction-of-justice enhancement as an example of one such "conversion from separate crime to sentence enhancement."). Because defendant has been convicted of and punished for the separate crime of escape, it would amount to unwarranted double-counting to enhance his sentence by reason of conduct that has been adequately punished. *See, e.g.*, U.S.S.G. Ch. 3, Pt. D, intro. comment. (noting that multiple count rules seek to "provide incremental punishment for significant additional criminal conduct" while "prevent[ing] multiple punishment for substantially identical offense conduct"). Accordingly, the court exercises its discretion under the Guidelines "to fashion a sentence of appropriate length and structure it to run in any appropriate manner to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3, comment. (n.3(D)); U.S.S.G. § 5G1.3(c); 5G1.3, comment. (n.3(E)) (noting that "a downward departure may be warranted to ensure that the combined punishment is not increased unduly by the fortuity and timing of separate prosecutions and sentencings"). *See also Blakely*, 542 U.S. at —, 124 S. Ct. at 2540 n.11.

The court thus finds that an obstruction-of-justice enhancement is not appropriate in this case, since if the court were to enhance defendant's sentence pursuant to the provision, the court would then downwardly depart from the sentence by the amount of the time served in state incarceration. Defendant would receive the same sentence in either case. Although defendant will not receive credit for time served on the state court escape charge, he is entitled to an adjustment under U.S.S.G. § 5G1.3(c) for the time he spent in federal custody for five months in 2001 and from July 12, 2004, to the date of this order.

Accordingly, the court determines that defendant Lozano's base offense level under the Guidelines is 29 and his criminal history category is III, resulting in a Guideline

sentencing range of 108 to 135 months. The court makes an adjustment under U.S.S.G. § 5G1.3 for time served in federal custody on this charge. Also, defendant is to be credited the time he served from February 20, 2001, until July 17, 2001, and from July 12, 2004, until the date of this order.

### C. Constitutional Objections

In light of its finding that a sentence enhancement for obstruction of justice is not appropriate under the Guidelines, the court need not address defendant's constitutional objections. In the interest of completeness, however, the court makes the alternative finding that imposition of an obstruction-of-justice enhancement would violate defendant's Fifth Amendment right to due process. *See Apprendi*, 530 U.S. at 476.[1] The Due Process Clause is implicated whenever a judge determines a fact by a standard lower than "beyond a reasonable doubt" if that factual finding would increase the punishment above the lawful

---

[1] *Cf. United States v. Pirani*, 406 F.3d 543, 551 n.4 (8th Cir. 2005) (*en banc*) (noting that *Booker* does not require that sentencing judges find sentence-enhancing facts beyond a reasonable doubt). *Booker's* remedial opinion, however, simply does not involve the Fifth Amendment. In *Booker,* the Supreme Court carefully limited its holding to the Sixth Amendment right to jury trial and did not address the requirement of proof beyond a reasonable doubt which has its roots in the Fifth Amendment's Due Process Clause. *See Booker,* — U.S. at —, 125 S. Ct. at 798 n.6 (Thomas, J., dissenting in part) ("[t]he Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by a jury or admitted by defendant."). Moreover, *Pirani* is distinguishable because the defendant in *Pirani* had not preserved the issue by raising an *Apprendi* objection. *Id.* at 549.

The *Booker* decision has been interpreted to establish that "but for the mandatory nature of the Guidelines, fact-findings by the district court will not offend the Sixth Amendment." *United States v. Ryder*, No. 03-3478/79, 2005 WL 1639460 (8th Cir. July 14, 2005). Whether such facts pass muster under the Fifth Amendment is a different question. To the extent that making the Guidelines advisory obviates Constitutional concerns, there are distinctions to be drawn between Fifth Amendment and Sixth Amendment protections. *See United States v. Pimental*, 367 F. Supp. 2d 143, 152 (D. Mass. 2005) (stating that "even if the Sixth Amendment's jury trial guarantee is not directly implicated because the regime is no longer a mandatory one, the Fifth Amendment's Due Process requirement is"). *See also Booker*, — U.S. at —, 125 S. Ct. at 799 (Thomas, J., concurring in substantive majority opinion, dissenting to remedial majority opinion) (stating that the substantive majority opinion "corrects the [Sentencing Commission's] mistaken belief," set forth in U.S.S.G. § 6A1.3, that "use of a preponderance of the evidence standard is appropriate to meet due process concerns and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case.").

sentence that could have been imposed absent that fact.  *Apprendi*, 530 U.S. at 494.  In *Apprendi*, the Court held that the existence of "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" must be charged in the indictment, submitted to a jury, and proved beyond a reasonable doubt.  *Apprendi*, 530 U.S. at 476.  In *Blakely*, the Court defined the "statutory maximum" as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."  *Blakely*, 542 U.S. at —, 124 S. Ct. at 2537 (emphasis in original).  *Blakely* thus broadened *Apprendi* by requiring that "all facts 'which the law makes essential to the punishment'" be subject to constitutional protections.  *Blakely*, 124 S. Ct. at 2537 (quoting 1 J. Bishop, Criminal Procedure § 87 (2d ed. 1872)); *see United States v. Malouf*, 2005 WL 1398624 (D. Mass. 2005).  Thus, it remains true after *Blakely* and *Booker* that "a judge's role in sentencing is constrained at its outer limits by *the facts alleged in the indictment* and found by the jury," or by a judge, with defendant's consent to judicial factfinding.  *See Apprendi*, 430 U.S. at 483 n.10.

In the present case, to state it simply, the enhancement for obstruction of justice was not pled in the indictment, nor proven beyond a reasonable doubt.  Defendant entered into a plea agreement with the government, pursuant to which he waived his right to have a jury determine his guilt.  His admissions in his petition to enter a plea of guilty and in the plea colloquy establish, beyond a reasonable doubt, all the elements of the crime of drug distribution.  The plea agreement establishes the amount of drugs for which defendant can be held responsible.  Defendant has not, however, admitted that he obstructed justice in connection with the offense of conviction and the plea agreement does not contemplate an increase in his sentence for obstruction of justice.  The government could have

negotiated inclusion of the enhancement in the plea agreement, but it did not. Under the circumstances, the court would alternatively find that defendant's constitutional objection to the enhancement should be sustained. *See, e.g., United States v. Okai*, No. 4:05CR19, 2005 WL 2042301 (D. Neb. Aug. 22, 2005).

Under *Booker's* remedial scheme, the court must determine defendant's reasonable sentence. *Booker,* — U.S. at —, 125 S. Ct. at 767. The court must "impose a sentence sufficient, but not greater than necessary, to comply with sentencing purposes." 18 U.S.C. § 3553(a). The court has considered "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The court has also considered the need to avoid unwarranted disparity. 18 U.S.C. § 3553(a)(6).

The court notes that defendant Lozano essentially delivered drugs at the behest of his boss and co-defendant Jose Campos. Mr. Campos was sentenced to 154 months for his participation in the offense. Also, defendant Lozano sold drugs on two occasions to an undercover officer. Defendant argues that the quantity of drugs attributable to him would have been reduced by half had the undercover agent arrested him after the first buy. The court has considered the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). In addition, the court has considered the kinds of sentence available and the applicable category of offenses and category of defendant as

set forth in the advisory Guidelines, their policy statements.  18 U.S.C. § 3553(a)(2).  The court has consulted the Guidelines and has taken them into account.

In consideration of the foregoing, the court finds a sentence of 108 months is reasonable in this case.  Defendant is likely to be deported, but in the event he is not deported or returns to the United States, a supervised release term of five years will be imposed.  A judgment and order of commitment, together with a statement of reasons, in conformity with this Memorandum Opinion, will issue this date.

DATED this 10th day of November, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge